**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

TERESA WILSON, RYAN SANDERS, SUSAN CANADA, TIFFANIE SKIBICKI, ANGEL WILSON, LISA GRAY, SHAWWANA KOONTZ, KRISTINE PAUL, HEATHER LOWREY, JOLINA MANLEY, JEAN LEFFINGWELL, JESSICA DAVID, SOMMER MCGURL, HAYLEY PFIEFER and CASSANDRA MARTELL individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

GERBER PRODUCTS COMPANY; and DOES 1 through 10, inclusive,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Teresa Wilson, Ryan Sanders, Susan Canada, Tiffanie Skibicki, Angel Wilson, Lisa Gray, Shawwana Koontz, Kristine Paul, Heather Lowrey, Jolina Manley, Jean Leffingwell, Jessica David, Sommer McGurl, Hayley Pfiefer and Cassandra Martell ("Plaintiffs"), on behalf of themselves and the Class and Subclasses of all others similarly situated, bring this class action against Defendant Gerber Products Company ("Gerber" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1. This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food

products it sells are, among various things, healthy, organic, nutritious, high quality, free from artificial colors and flavors, and safe for consumption by infants and young children.

2.      Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods, including those manufactured by Defendant Gerber, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[1]

3.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

4.      Defendant Gerber knew or should have known that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are healthy, organic, and high quality. Yet Defendant Gerber chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of toxic heavy metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Gerber's representations.

5.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf     (Feb. 4,     2021)     ("Subcommittee Report").

products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68 *et seq.*, Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.,* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.,* Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 *et seq*., New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, and New York False Advertising Act, N.Y. Gen. Bus. Law § 350.

**THE PARTIES**

6. Plaintiff Teresa Wilson ("Plaintiff T. Wilson") is a citizen of the State of Indiana and is a member of the Nationwide Class and the Indiana Subclass. Plaintiff T. Wilson purchased various Gerber baby food products, including all of the fruit and veggie mixed blend purees, cereal, and oatmeal.

7. Plaintiff Ryan Sanders ("Plaintiff Sanders") is a citizen of the State of Oklahoma and is a member of the Nationwide Class and the Oklahoma Subclass. Plaintiff Sanders purchased various baby food products from Gerber, including but not limited to, various flavors of fruit pouches, rice puffs, and jarred baby food.

8. Plaintiff Susan Canada ("Plaintiff Canada") is a citizen of the State of North Carolina and is a member of the Nationwide Class and the North Carolina Subclass. Plaintiff Canada purchased a wide range of Gerber baby food products, including but not limited to:

a. Gerber Single Grain Rice Cereal
b. Gerber Single Grain Oatmeal Cereal
c. Gerber Apple Cinnamon Oat & Barley Cereal
d. Whole Wheat Apple Blueberry Cereal

     e.      All foods from Gerber's "2nd Foods" Stage
     f.       Various flavors of the Toddler "Pouches"
     g.      All flavors of Gerber's "Little Crunchies"
     h.      All flavors of Gerber's "Puffs"
     i.       Various flavors of Gerber's Fruit and Veggie Melts, Yogurt Melts, and Arrow Root Cookies
     j.       Gerber's Good Start Gentle Pro Infant Formula and Start Sooth Pro Infant Formula

9.      Plaintiff Tiffanie Skibicki ("Plaintiff Skibicki") is a citizen of the State of Minnesota and is a member of the Nationwide Class and the Minnesota Subclass. Plaintiff Skibicki purchased several varieties of Gerber's Purees and Gerber's Oatmeal Cereal.

10.     Plaintiff Angel Wilson ("Plaintiff A. Wilson") is a citizen of the State of Delaware and is a member of the Nationwide Class and the Delaware Subclass. Plaintiff A. Wilson purchased various flavors of Gerber's baby food jars, including but not limited to, Carrots, Peas, Green Beans, Apples, and Bananas, as well as Gerber Yogurt, various flavors of Gerber's "Puffs", Gerber's Rice Cereal, and Gerber's Oatmeal Cereal.

11.     Plaintiff Lisa Gray ("Plaintiff Gray") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff Gray purchased various Gerber products, including but not limited to:

     a.      Gerber Apple and Cinnamon Puffs
     b.      Gerber's "2nd Stage" Apple
     c.      Gerber's "2nd Stage" Banana
     d.      Gerber's "2nd Stage" Green Bean
     e.      Gerber's "2nd Stage" Carrot
     f.       Gerber's "2nd Stage" Sweet Potato
     g.      Gerber's "2nd Stage" Squash
     h.      Gerber's "2nd Stage" Blueberry and Apple
     i.       Gerber's Chicken and Vegetables Dinner
     j.       Gerber's Turkey Dinner
     k.      Gerber Oatmeal
     l.       Geber Rice Cereal
     m.    Gerber Mixed Vegetables
     n.     Gerber's Chicken Noodle Dinner
     o.      Gerber Banana Peach Teethers Teething Wafers
     p.      Gerber Arrow Root Biscuits

12.    Plaintiff Shawwana Koontz ("Plaintiff Koontz") is a citizen of the State of Kentucky and is a member of the Nationwide Class and the Kentucky Subclass. Plaintiff Koontz purchased Gerber's baby food jars in the flavors Bananas, Green Beans, and Squash, as well as Gerber's Puffs.

13.    Plaintiff Kristine Paul ("Plaintiff Paul") is a citizen of the State of Washington and is a member of the Nationwide Class and the Washington Subclass. Plaintiff Paul purchased Gerber's baby food jars in the flavors Butternut Squash, Apple, Green Beans, Bananas, Sweet Potato, Apple Blueberry, Apple Strawberry and banana, Gerber Arrow Root Biscuits, Carrot Mango, Pineapple, Pear Pineapple, as well as Gerber's Probiotic Rice - Apple Banana, Probiotic Oatmeal – Peach Apple, Yogurt Melts, Puffs, Lil Crunchies and Yogurt Blends.

14.    Plaintiff Heather Lowrey ("Plaintiff Lowrey") is a citizen of the State of Texas and is a member of the Nationwide Class and the Texas Subclass. Plaintiff Lowrey purchased a wide range of Gerber baby food products, including but not limited to Gerber Formula, Gerber Cereal, various flavors of Gerber's Stage 1 baby food jars, and various flavors of Gerber's Stage 2 baby food jars.

15.    Plaintiff Sommer McGurl ("Plaintiff McGurl") is a citizen of the State of Texas and is a member of the Nationwide Class and the Texas Subclass. Plaintiff McGurl purchased various flavors of Gerber's baby food jars, Apple and Prune Juice, a range of Gerber's Toddler Meals, Strawberry and Peach Yogurt Blends, Banana Yogurt Melts, and various flavors of Gerber's Puffs.

16.    Plaintiff Jolina Manley ("Plaintiff Manley") is a citizen of the State of Nebraska and is a member of the Nationwide Class and the Nebraska Subclass. Plaintiff Manley purchased

a variety of Gerber's baby food jars, as well as Gerber's Turkey and Gravy and Chicken and Gravy dinners.

17.    Plaintiff Jean Leffingwell ("Plaintiff Leffingwell") is a citizen of the State of West Virginia and is a member of the Nationwide Class and the West Virginia Subclass. Plaintiff Leffingwell purchased a variety of Gerber's Products, including but not limited to Gerber's baby food jars, and Gerber's Teethers Wafers.

18.    Plaintiff Jessica David ("Plaintiff David") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff David purchased Gerber's "Lil Crunchies", Strawberry and Mixed Berry Yogurt Melts, Ravioli, and a range of Gerber's baby food jars in all flavors.

19.    Plaintiff Hayley Pfiefer ("Plaintiff Pfiefer") is a citizen of the State of Wisconsin and is a member of the Nationwide Class and the Wisconsin Subclass. Plaintiff Pfiefer purchased a variety of Gerber's baby food jars and Gerber Rice Cereal.

20.    Plaintiff Cassandra Martell ("Plaintiff Martell") is a citizen of the State of New York and is a member of the Nationwide Class and the New York Subclass. Plaintiff Martell purchased Gerber Rice Cereal, a wide variety of Gerber's Baby Food Jars, Gerber's Puffs, "Lil Crunchies", Apple Juice, White Grape Juice, Yogurt Melts, and a variety of Gerber's Baby Food Pouches.

21.    Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Gerber's baby food products. Due to the false and misleading claims and omissions by Defendant Gerber as described herein, Plaintiffs were unaware that the baby food products sold by Defendant Gerber contained any

level of toxic heavy metals, and Plaintiffs would not have purchased the products if that information had been fully disclosed.

22. Defendant Gerber is a citizen of Michigan, where it is incorporated, and Virginia, where it maintains its principal place of business at 1812 N. Moore St. Arlington, VA 22209. Gerber was purchased by Nestlé in 2007, and is now a subsidiary of Nestlé S.A. Gerber's sister company, Nestlé USA, is incorporated in Delaware and also headquartered in Arlington, Virginia. Gerber formulates, develops, manufactures, distributes, markets, advertises and sells its baby food products throughout the United States, and is currently the market leader for infant foods in the United States.[2]

23. The true names and capacities of DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE defendants under fictitious names. Upon information and belief, each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and Plaintiffs and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Gerber. Further, greater than two-thirds of the Class members reside in states other than the state in which Gerber is a citizen.

[2] Nestle, Company History–Gerber, https://www.nestle.com/aboutus/history/nestle-company-history/gerber

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant is a corporation that maintains its principal place of business in this jurisdiction. Further, Defendant (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.  Venue is proper in the Alexandria Division because Gerber resides in this Division.

## FACTUAL ALLEGATIONS

### A.    Defendant Falsely Marketed and Advertised its Baby Food Products

26.    Defendant Gerber manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Gerber label. Gerber makes various representations about its Products, including that they are, among various things, healthy, organic, nutritious, high quality, free from artificial colors and flavors, and safe for consumption by infants and young children.

27.    Gerber claims on its website that they have "stringent quality and food safety standards for all our foods. Not to brag, but many of our food safety and quality standards even exceed government requirements."[3] Gerber is also committed to research regarding its products, and focuses on three fundamental areas of benefits for parents: safety and quality; nutrition and health; and taste, texture, and convenience.[4]

28.    Gerber also claims on its website that its foods must pass more than 100 individual quality checks before they can be sold, which occurs at 5 different stages, from growing through cooking and jarring. Gerber follows an annual testing plan featuring regular

---

[3] *Gerber, Our Ingredients*, https://www.gerber.com/our-ingredients
[4] *Gerber, Research*, https://www.gerber.com/research

safety tests of finished products. Gerber further states that its farmers reduce the presence of heavy metals by "using best in class practices like soil testing, rotating crops, and choosing peak harvest times. This ensures crops are safe, tasty, and nutritious."[5]

29. The products at issue are various types of Gerber's baby food products that contain heavy metals, including but not limited to the Gerber products purchased by Plaintiffs ("Products")[6], and may include Gerber's other Products, including but not limited to:

- Gerber Banana Sitter 2nd Foods;
- Gerber Sweet Potato Sitter 2nd Foods;
- Gerber Apple Strawberry Banana Sitter 2nd Foods;
- Gerber Apple Sitter 2nd Foods;
- Gerber Banana Blackberry Blueberry Sitter 2nd Foods;
- Gerber Pear Sitter 2nd Foods;
- Gerber Apple Banana with Oatmeal Sitter 2nd Foods;
- Gerber Banana Apple Pear Sitter 2nd Foods;
- Gerber Butternut Squash Sitter 2nd Foods;
- Gerber Banana Orange Medley Sitter 2nd Foods;
- Gerber Apple Blueberry Pouch Sitter 2nd Foods;
- Gerber Green Bean Sitter 2nd Foods;
- Gerber Banana Pear Zucchini Pouch Toddler 12+ Months;
- Gerber Carrot Sitter 2nd Foods;
- Gerber Apple Blueberry Sitter 2nd Foods;
- Gerber Organic Banana Mango Pouch Sitter 2nd Foods;
- Gerber Fruit & Yogurt Strawberry Banana Pouch Toddler 12+ Months;
- Gerber Peach Sitter 2nd Foods;
- Gerber Banana Blueberry Pouch Toddler 12+ Months;
- Gerber Sweet Potato Turkey with Whole Grains Dinner Sitter 2nd Foods;
- Gerber Banana Supported Sitter 1st Foods;
- Gerber Organic Pear Peach Strawberry Pouch Sitter 2nd Foods;
- Gerber Pear Cinnamon with Oatmeal Sitter 2nd Foods;
- Gerber Organic Apple Blueberry Spinach Sitter 2nd Foods;
- Gerber Pea Sitter 2nd Foods;
- Gerber Apple Mango Strawberry Pouch Toddler 12+ Months;
- Gerber Pear Pineapple Sitter 2nd Foods;
- Gerber Carrot Sweet Potato Pea Sitter 2nd Foods;
- Gerber Fruit & Yogurt Very Berry Pouch Toddler 12+ Months;
- Gerber Apple Pear Peach Pouch Toddler 12+ Months;
- Gerber Sweet Potato Corn Sitter 2nd Foods;

[5] *Gerber, Quality & Safety FAQs*, https://www.gerber.com/learning-center/quality-safety-faqs
[6] Plaintiffs reserve the right to amend this definition upon completion of discovery.

- Gerber Apple Supported Sitter 1st Foods;
- Gerber Banana Carrot Mango Sitter 2nd Foods;
- Gerber Organic Pear Peach Strawberry, Carrot Apple Mango & Apple Blueberry Spinach Baby Food Pouch Variety Pack Sitter 2nd Foods;
- Gerber Mango Sitter 2nd Foods;
- Gerber Organic Purple Carrot Banana Acai with Cardamom Pouch Sitter 2nd Foods;
- Gerber Apricot Mixed Fruit Sitter 2nd Foods;
- Gerber Chicken and Gravy Sitter 2nd Foods;
- Gerber Organic Squash Pear Peach with Basil Pouch Sitter 2nd Foods;
- Gerber Organic Squash Apple Sweet Potato Pouch Sitter 2nd Foods;
- Gerber Sweet Potato Supported Sitter 1st Foods;
- Gerber Turkey and Gravy Sitter 2nd Foods;
- Gerber Beef with Gravy Sitter 2nd Foods;
- Gerber Fruit & Yogurt Peaches & Cream Toddler 12+ Months;
- Gerber Prune Apple Sitter 2nd Foods;
- Gerber Organic Apple Zucchini Spinach Strawberry Pouch Sitter 2nd Foods;
- Gerber Ham with Gravy Sitter 2nd Foods;
- Gerber Prune Supported Sitter 1st Foods;
- Gerber Apple Banana with Mixed Cereal Sitter 2nd Foods;
- Gerber Banana Supported Sitter 1st Foods;
- Gerber Banana Plum Grape Sitter 2nd Foods;
- Gerber Very Berry, Peaches & Cream & Strawberry Banana Fruit & Yogurt Pouches Toddler 12+ Months;
- Gerber Carrot Supported Sitter 1st Foods;
- Gerber Organic Carrot Apple Mango Pouch Sitter 2nd Foods;
- Gerber Pear Zucchini Corn Sitter 2nd Foods;
- Gerber Apple Cherry Sitter 2nd Foods;
- Gerber Apple Sweet Potato with Cinnamon Toddler 12+ Months;
- Gerber Banana Blueberry Sitter 2nd Foods;
- Gerber Apple Strawberry Banana Sitter 2nd Foods;
- Gerber Organic Banana Raspberry & Yogurt with Vanilla Pouch Toddler 12+ Months;
- Gerber Pear Supported Sitter 1st Foods;
- Gerber Apple Supported Sitter 1st Foods;
- Gerber Apple Strawberry Banana Pouch Sitter 2nd Foods;
- Gerber Carrot Supported Sitter 1st Foods;
- Gerber Apple Avocado Sitter 2nd Foods;
- Gerber Apple Zucchini Peach Sitter 2nd Foods;
- Gerber Organic Pear Spinach, Pear Mango Avocado & Apple Zucchini Spinach Strawberry Variety Pack Pouches Sitter 2nd Foods;
- Gerber Apple Spinach & Kale Sitter 2nd Foods;
- Gerber Butternut Squash Supported Sitter 1st Foods;
- Gerber Organic Mango Apple Carrot Kale, Apple Peach & Banana Mango Baby Food Variety Pack Pouches Sitter 2nd Foods;
- Gerber Apple Carrot Squash Sitter 2nd Foods;

- Gerber Apple Prune Sitter 2nd Foods;
- Gerber Peach Supported Sitter 1st Foods;
- Gerber Apple Peach Squash Sitter 2nd Foods;
- Gerber Organic Mango Peach Carrot Sweet Potato Oatmeal Pouch Toddler 12+ Months;
- Gerber Pear Carrot Pea Sitter 2nd Food;
- Gerber Banana Strawberry Beet Oatmeal Pouch Toddler 12+ Months;
- Gerber Green Bean Supported Sitter 1st Foods;
- Gerber Pear Supported Sitter 1st Foods;
- Gerber Organic Banana Mango Avocado Quinoa Vanilla Pouch Toddler 12+ Months;
- Gerber Sweet Potato Apple Pumpkin Sitter 2nd Foods;
- Gerber Sweet Potato Banana Orange Sitter 2nd Foods
- Gerber Organic Apple Mango Raspberry Avocado Oatmeal Pouch Toddler 12+ Months;
- Gerber Pear Guava Sitter 2nd Foods;
- Gerber Sweet Potato Mango Kale Sitter 2nd Foods;
- Gerber Pear Mango Avocado Pouch Sitter 2nd Foods;
- Gerber Pumpkin Sitter 2nd Foods;
- Gerber Squash Pear Pineapple Sitter 2nd Foods;
- Gerber Apple Strawberry Rhubarb Sitter 2nd Foods;
- Gerber Organic Pear Peach Oatmeal Toddler 12+ Months;
- Gerber Pear Zucchini Sitter 2nd Foods;
- Gerber Organic Banana Acai Berry Mixed Grain Pouch Toddler 12+ Months;
- Gerber Pea Supported Sitter 1st Foods;
- Gerber Puree Favorites Variety Pack Chicken and Gravy & Turkey and Gravy Sitter 2nd Foods;
- Gerber Banana Pouch Sitter 2nd Foods;
- Gerber Pasta Marinara Advanced;
- Gerber Pear Parsnip Blueberry Sitter 2nd Foods
- Gerber Organic Apple Purple Carrot Blueberry with Yogurt Pouch Toddler 12+ Months;
- Gerber Carrot Mango Pineapple Sitter 2nd Foods;
- Gerber Pasta Primavera Advanced;
- Gerber Strong Banana Blueberry Purple Carrot Greek Yogurt Mixed Grains Pouch Toddler 12+ Months;
- Gerber Garden Veggies & Rice Advanced;
- Gerber Squash Apple Corn Sitter 2nd Foods;
- Gerber Banana Blueberry Rice Pudding Advanced;
- Gerber Strong Pear Sweet Potato Greek Yogurt Oats Cinnamon Pouch Toddler 12+ Months;
- Gerber Pumpkin Banana Sitter 2nd Foods;
- Gerber Strong Broccoli Carrot Banana Pineapple Pouch Toddler 12+ Months;
- Gerber My 1st Veggies Starter Kit Supported Sitter 1st Foods;
- Gerber Organic Sweet Potato Apple Carrot& Cinnamon Sitter 2nd Foods;
- Gerber Organic Banana Supported Sitter 1st Foods;

- Gerber Mango Apple Twist Sitter 2nd Foods;
- Gerber Sweet Potato Mango Pear Kale Pouch Toddler 12+ Months;
- Gerber Organic Apple Kale Fig Sitter 2nd Foods;
- Gerber Organic Carrot Supported Sitter 1st Foods;
- Gerber My 1st Fruits Starter Kit Supported Sitter 1st Foods;
- Gerber Organic Apple Supported Sitter 1st Foods;
- Gerber Organic Apple Mango Brown Rice with Vanilla Pouch Toddler 12+ Months;
- Gerber Fruit & Veggie Favorites Baby Food Variety Pack Tubs Sitter 2nd Foods;
- Gerber Apple Chicken Dinner Sitter 2nd Foods;
- Gerber Organic Apple Peach Pouch Sitter 2nd Foods;
- Gerber Organic Apple Spinach with Kale Sitter 2nd Foods;
- Gerber Apple Mango with Rice Cereal Sitter 2nd Foods;
- Gerber Organic Apple Raspberry Acai Berry Pouch Sitter 2nd Foods;
- Gerber Apple Strawberry Blueberry Mixed Cereal Sitter 2nd Foods;
- Gerber Organic Banana Blueberry Blackberry Oatmeal Pouch Sitter 2nd Foods;
- Gerber Chicken Noodle Dinner Sitter 2nd Foods;
- Gerber Organic Mango Apple Banana Sitter 2nd Foods;
- Gerber Organic Banana Apple Strawberry with Millet Quinoa & Cinnamon Sitter 2nd Foods;
- Gerber Organic Banana Mango Sitter 2nd Foods;
- Gerber Chicken Rice Dinner Sitter 2nd Foods;
- Gerber Organic Banana Squash Pouch Sitter 2nd Foods;
- Gerber Hawaiian Delight Sitter 2nd Foods;
- Gerber Organic Pear Purple Carrot Raspberry Sitter 2nd Foods;
- Gerber Organic Apple Wild Blueberry Sitter 2nd Foods;
- Gerber Organic Banana Strawberry Raspberry Mixed Grain Toddler 12+ Months;
- Gerber Mac & Cheese with Vegetables Dinner Sitter 2nd Foods;
- Gerber Organic Apple Strawberry Beet Sitter 2nd Foods;
- Gerber Organic Mango Apple Carrot Kale Pouch Sitter 2nd Foods;
- Gerber Pea Carrot Spinach Sitter 2nd Foods;
- Gerber Organic Pear Blueberry Apple Avocado Pouch Sitter 2nd Foods;
- Gerber Turkey Rice Dinner Sitter 2nd Foods;
- Gerber Organic Carrot Banana Mango with Millet & Quinoa Sitter 2nd Foods;
- Gerber Organic Pear Spinach Pouch Sitter 2nd Foods;
- Gerber Vanilla Custard Pudding with Banana Sitter 2nd Foods;
- Gerber Organic Carrot Apple Pear Sitter 2nd Foods;
- Gerber Organic Pear Zucchini Mango Sitter 2nd Foods;
- Gerber Vegetable Beef Dinner Sitter 2nd Foods;
- Gerber Organic Pear Supported Sitter 1st Foods;
- Gerber Organic Pumpkin Banana Carrot Pouch Sitter 2nd Foods;
- Gerber Vegetable Chicken Sitter 2nd Foods;
- Gerber Lil' Mixers Vegetable Chicken + Mixed Grain & Carrot Beginner;
- Gerber Lil' Mixers Sweet Potato Turkey + Mixed Grain & Carrot Beginner;
- Gerber Lil' Mixers Apple Avocado + Quinoa Crisp Intermediate;
- Gerber Lil' Mixers Carrot Sweet Potato Pea + Quinoa Crisp Intermediate.

30.     Gerber uses words such as nutritious and natural and categorizes its products by ages such as "supported sitter – 1st foods", "sitter – 2nd foods", "crawler – 3rd foods", and "toddler" to emphasize the foods suitability for consumption by infants and young children.

31.     Gerber's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.     Defendant's Marketing and Advertising Misled and Deceived Consumers**

32.     Parent consumers are drawn to representations such as the ones claimed on Gerber's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

33.     Gerber's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Gerber's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

34.     In light of Gerber's marketing, including its professed commitment to providing high quality, natural and nutritious products that are free from artificial flavors and colors, Gerber knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Gerber knew consumers purchased the Products based on the reasonable expectation that Gerber manufactured the Products in a way that was proscribed by its marketing and advertising.

35. Gerber intended that Plaintiffs and Class members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Gerber, as well as its advertising, marketing, and labeling of the Products as high quality, natural and nutritious products that are free from artificial flavors and colors, and safe for consumption by infants and young children.

36. Based on Gerber's decision to advertise, label, and market its Products as high quality, natural and nutritious products that are free from artificial flavors and colors, and safe for consumption by infants and young children, Gerber had a duty to ensure that these statements were true and not misleading. As such, Gerber knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

37. However, Gerber's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Gerber failed to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Gerber intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase the Products.

38. As a result of Gerber's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

39. Gerber therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C. <u>Heavy Metals</u>**

40. Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral

problems like attention-deficit hyperactivity disorder ("ADHD").[7] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

41. The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[8]

42. Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals—tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[9]

43. The Healthy Babies Bright Futures Report revealed that Gerber's Rice Single Grain Baby Cereal contains 106 parts per billion ("ppb") of arsenic, 74 ppb of which was inorganic arsenic, 3.9 ppb of lead, 11.1 ppb of cadmium, and 1.79 ppb of mercury.[10]

44. In addition to the Healthy Babies Bright Futures Report, as mentioned above, The Subcommittee published a report revealing findings that numerous baby foods, including those manufactured by Defendant Gerber, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[11]

---

[7] *See generally* Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").
[8] Subcommittee Report at 9.
[9] *See generally* Healthy Babies Bright Futures Report.
[10] *Id.* at 19.
[11] *See* Subcommittee Report at 9.

45. As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[12]

46. Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[13]

**a. <u>Arsenic</u>**

47. Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[14] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[15]

48. Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[16] Studies find lasting impacts when young children are exposed to arsenic early in life.[17] There is also no evidence that the effects of arsenic exposure are reversible.[18]

---

[12] *Id.*at 9.
[13] *Id.*
[14] Healthy Babies Bright Futures Report at 13.
[15] *Id.*
[16] *Id.*
[17] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced,

49.    The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[19] However, the Subcommittee Report shows that Gerber used "high-arsenic ingredients," using 67 batches of rice flour that had tested over 90 ppb of inorganic arsenic.[20]

**b.    <u>Cadmium</u>**

50.    Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[21]

51.    Cadmium is a number seven on the Agency for Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[22]

52.    The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[23] However, according to the Subcommittee's findings, the test results of baby foods and their ingredients "eclipse those levels."[24] In fact, seventy-five percent of Gerber's carrots contained cadmium in excess of 5 ppb of cadmium, with some containing up to 87 ppb of cadmium.[25]

---

cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants.").
[18] *Id.*
[19] 21 C.F.R. § 165.110; Subcommittee report at 4.
[20] Subcommittee report at 3.
[21] Healthy Babies Bright Futures Report at 14.
[22] Subcommittee report at 12.
[23] *Id.* at 4.
[24] *Id.*
[25] *Id.* at 4.

    **c. Lead**

53. Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[26] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[27]

54. According to the FDA, lead is especially dangerous to infants and young children.[28] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[29]

55. The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[30] However, the Subcommittee's findings reveal that Gerber used ingredients that tested as high as 48 ppb of lead, and used many ingredients that contained over 20 ppb of lead.[31]

**d. Mercury**

56. Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[32] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[33]

57. Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[34]

---

[26] Healthy Babies Bright Futures Report at 13.
[27] Subcommittee Report at 11.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 4.
[31] *Id.* at 3.
[32] Healthy Babies Bright Futures Report at 17.
[33] Subcommittee Report at 12.

58. The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[35] According to the Subcommittee Report, Gerber rarely tests for mercury in its baby foods.[36]

**D. Plaintiffs and Class Members' Reliance was Reasonable**

59. Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

60. Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Gerber's Products actually contained high levels of toxic heavy metals, Plaintiffs and Class Members would not have purchased the Products.

61. A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were natural, healthy, free from artificial flavors and colors, and safe for consumption by infants and young children, and did not contain levels of toxic heavy metals.

**CLASS ACTION ALLEGATIONS**

62. Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Classes:

[34] *Id.* at 12–13.
[35] *Id.* at 4.
[36] *Id.* at 3.

**Nationwide Class**

All persons within the United States who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Delaware Subclass**

All persons within the State of Delaware who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Florida Subclass**

All persons within the State of Florida who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Indiana Subclass**

All persons within the State of Indiana who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Kentucky Subclass**

All persons within the State of Kentucky who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Minnesota Subclass**

All persons within the State of Minnesota who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Nebraska Subclass**

All persons within the State of Nebraska who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**New York Subclass**

All persons within the State of New York who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**North Carolina Subclass**

All persons within the State of North Carolina who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Oklahoma Subclass**

All persons within the State of Oklahoma who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Texas Subclass**

All persons within the State of Texas who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Washington Subclass**

All persons within the State of Washington who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**West Virginia Subclass**

All persons within the State of West Virginia who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

**Wisconsin Subclass**

All persons within the State of Wisconsin who purchased Gerber's Baby Food Products for household or business use during the applicable statute of limitations period and who have not received a refund or credit for their purchase(s).

63. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

64. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

65. **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

66. **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b. Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.  Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.  Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.  Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

h.  Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.  Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

67.  Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are high quality, natural, nutritious or free from artificial flavors and colors, and (b) the Products actually contain levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

68.    **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

69.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members they seek to represent. Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

70.    **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable

to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes**.** Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
***(on behalf of the Classes)***

71. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

72. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for breach of express warranty.

73. Gerber marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

74. Gerber expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are high quality, natural and nutritious products that are free from artificial flavors and colors, and safe for consumption by infants and young children.

75. Gerber made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

76. Gerber's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and members of

the Classes relied on Gerber's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Gerber's Products.

77.     Gerber's Products do not conform to Gerber's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, as they contain, or may contain, levels of various toxic heavy metals.

78.     Gerber was on notice of this breach, as Gerber was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

79.     Privity exists because Gerber expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

80.     As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

81.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
***(on behalf of the Classes)***

82. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

83. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for breach of implied warranty of merchantability.

84. Gerber is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

85. At all times mentioned herein, Gerber manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Gerber impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children. Plaintiffs and members of the Classes relied on Gerber's promises and affirmations of fact when they purchased the Products.

86. Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Gerber's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

87. Gerber breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

88. Gerber was on notice of this breach, as Gerber was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

89. Privity exists because Gerber impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

90. As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

91. Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## THIRD CAUSE OF ACTION
**Fraud by Omission**
***(on behalf of the Classes)***

92. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

93. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for fraud by omission.

94. Gerber concealed from and failed to disclose to Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural

or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

95.    Gerber was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Gerber was in a superior position to know the true state of facts about its products; (2) Gerber was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Gerber knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

96.    The facts concealed or not disclosed by Gerber to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

97.    Plaintiffs and members of the Classes justifiably relied on Gerber's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Gerber.

98.    As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

99. Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
***(on behalf of the Classes)***

100. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

101. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for negligent misrepresentation.

102. Gerber marketed the Products in a manner indicating that the Products were and are high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Gerber has made misrepresentations about the Products.

103. Gerber's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

104. At all relevant times when such misrepresentations were made, Gerber knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Gerber has no reasonable grounds for believing its misrepresentations were not false and misleading.

105. Gerber intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on

the Products' packaging by Gerber, as well as its advertising, marketing, and labeling of the Products as high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children.

106. Plaintiffs and members of the Classes have reasonably and justifiably relied on Gerber's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

107. Therefore, as a direct and proximate result of Gerber's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

108. Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
***(on behalf of the Classes)***

109. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

110. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for intentional misrepresentation.

111. Gerber marketed the Products in a manner indicating that the Products were and are high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children. However, the Products contained, or were at risk of

containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Gerber has made misrepresentations about the Products.

112.    Gerber's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

113.    At all relevant times when such misrepresentations were made, Gerber knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

114.    Gerber intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Gerber, as well as its advertising, marketing, and labeling of the Products as high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children.

115.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Gerber's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

116.    Therefore, as a direct and proximate result of Gerber's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

117. Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Quasi Contract/Unjust Enrichment/Restitution**
***(on behalf of the Classes)***

118. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as though fully set forth herein.

119. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for quasi contract, unjust enrichment, and restitution.

120. As alleged herein, Gerber has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Gerber. Plaintiffs and members of the Classes therefore have been induced by Gerber's misleading and deceptive representations about the Products, and paid more money to Gerber for the Products than they otherwise would and/or should have paid.

121. Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Gerber has retained monies paid to them by Plaintiffs and members of the Classes.

122. The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Gerber.

123. Therefore, it is inequitable and unjust for Gerber to retain the profit, benefit, or compensation conferred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

124. As a direct and proximate result of Gerber's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Gerber from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Minnesota Prevention of Consumer Fraud Act**
**M.S.A. § 325F.68 *et seq.***
**(*On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass*)**

125. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

126. Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68 *et seq.*

127. The Minnesota Prevention of Consumer Fraud Act prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." M.S.A. § 325F.69.

128. The Products at issue are "Merchandise" under M.S.A. § 325F.68, subd. 2.

129. Gerber and Plaintiff Skibicki and members of the Minnesota Subclass are "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, subd. 3.

130. For the reasons discussed herein, Gerber violated and continues to violate the Minnesota Prevention of Consumer Fraud Act by engaging in the deceptive, unfair acts or practices proscribed by M.S.A. § 325F.68 *et seq.* As detailed above, in the course of their

business, Gerber made materially false and misleading statements to Plaintiff Skibicki and members of the Minnesota Subclass and supplied Plaintiff Skibicki and members of the Minnesota Subclass with false information concerning the health and safety of its Products.

131. Gerber also concealed from Plaintiff Skibicki and members of the Minnesota Subclass the presence of, or risk of, toxic heavy metals in its Products.

132. Gerber intended that Plaintiff Skibicki and members of the Minnesota Subclass rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Gerber, as well as its advertising, marketing, and labeling of the Products as high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children.

133. By failing to warn Plaintiff Skibicki and members of the Minnesota Subclass that the Products contain, or may contain, toxic heavy metals such as arsenic, cadmium, mercury, and lead, Gerber violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq*. Had Gerber disclosed all material information regarding the presence of, or risk of, toxic heavy metals in its Products, Plaintiff Skibicki and members of the Minnesota Subclass would not have purchased the Products.

134. As a direct and proximate result of Gerber's violation of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68 *et seq.*, Plaintiff Skibicki and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk of and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

135. Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by Minnesota Prevention of Consumer Fraud Act and applicable law.

**EIGHTH CAUSE OF ACTION**
**Minnesota False Statement in Advertising Act**
**M.S.A. § 325F.67**
**(*On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass*)**

136. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

137. Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota False Statement in Advertising Act, M.S.A. § 325F.67.

138. Gerber's actions, representations and omissions constitute unfair and deceptive trade practices within the meaning of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, including but not limited to:

a. Advertising goods and/or services with the intent not to sell them as advertised;

b. Advertising or otherwise representing that goods or services are guaranteed in such a way as to have the capacity and tendency of misleading purchasers or prospective purchasers or prospective purchasers into believing that the goods or services so guaranteed have a greater degree of serviceability, durability, or performance capability in actual use than is true in fact; and

c. Failing to disclose material information concerning goods or services which information was known at the time of an advertisement or sale, and such failure to disclose such information was intended to induce Plaintiff and members of the Class to enter into a transaction.

139. By engaging in conduct described herein, Gerber violated and continues to violate the false advertising provisions of Minnesota's False Statement in Advertising Act, M.S.A. § 325F.67.

140. Gerber’s untrue, deceptive, and misleading assertions, representations, and advertisements concerning its Products include its statements that its Products are high quality, natural, nutritious, and free from artificial flavors and colors. Gerber markets its Products in a manner that indicates its Products are safe for consumption by infants and young children, as it uses words such as “ages”, “supported sitter”, “sitter”, “crawler” and “toddler” to emphasize the foods suitability for consumption by infants and young children.

141. The unfair and deceptive trade practices and false advertising described herein occurred in the course of Gerber's business and significantly impacted the public as actual and potential consumers of Gerber’s Products.

142. As a direct and proximate result of Gerber’s violation of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67., Plaintiff Skibicki and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products’ labels, packaging, advertising, and statements.

143. Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Gerber’s unfair and deceptive acts and practices, as provided by Minnesota False Statement in Advertising Act and applicable law.

**NINTH CAUSE OF ACTION**
**North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 *et seq.***
**(*On behalf of Plaintiff Susan Canada and the North Carolina Subclass*)**

144. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

145. Plaintiff Canada brings this claim individually and on behalf of the members of the proposed North Carolina Subclass against Gerber for violations of North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75.1-1 *et seq.*

146. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

147. Gerber's acts and practices described above were performed in the course of Gerber's trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

148. In the course of its business, Gerber concealed that its Products contained, or were at risk of containing, toxic heavy metals such as arsenic, cadmium, mercury, and lead, and otherwise engaged in activities with a tendency or capacity to deceive. Gerber also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of its Products.

149.    By misrepresenting that its Products were safe for consumption by infants and young children, and advertising its Products as high quality, natural, and nutritious, Gerber participated in unfair, deceptive, and unconscionable acts that violated the NCUDTPA.

150.    In light of Gerber's marketing, including its professed commitment to providing high quality, natural and nutritious products that are free from artificial flavors and colors, Gerber knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risk to humans, and particularly to infants and young children. Furthermore, Gerber tests its products over 100 times for quality, as evidenced by its representations on its website[37], and therefore was aware, or should have been aware, of the presence of toxic heavy metals in its Products. However, Gerber concealed the fact that its Products contain, or may contain, levels of toxic heavy metals.

151.    By failing to disclose and by actively concealing the presence of, or risk of, toxic heavy metals in its Products, and by marketing its Products as high quality, natural, nutritious, and safe for consumption by infants and young children, Gerber engaged in unfair, unconscionable, and deceptive business practices in violation of the NCUDTPA.

152.    Gerber intentionally and knowingly misrepresented material facts regarding the Products with an intent to mislead Plaintiff Canada and members of the proposed North Carolina Subclass.

153.    As a direct and proximate result of Gerber's violations of the NCUDTPA, Plaintiff Canada and members of the proposed North Carolina Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy

---

[37] *Gerber, Quality & Safety FAQs*, https://www.gerber.com/learning-center/quality-safety-faqs

metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

154. Plaintiff Canada and members of the North Carolina Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by NCUDTPA and applicable law.

**TENTH CAUSE OF ACTION**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
**(*On behalf of Plaintiffs Lisa Gray and Jessica David and the Florida Subclass*)**

155. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

156. Plaintiffs Lisa Gray and Jessica David bring this claim individually and on behalf of the members of the proposed Florida Subclass against Gerber for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

157. Plaintiffs Gray and David and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Gerber are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

158. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

159. For the reasons discussed herein, Defendant Gerber violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Gerber's acts and practices, including its

material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the   public, including Plaintiffs Gray and David and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

160.    At all times mentioned herein, Gerber engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

161.    Gerber repeatedly advertised, on the labels for its Products, on its websites, and through national advertising campaigns, among other things, that its Products were high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber failed to disclose the material information that its Products contained unsafe levels of toxic heavy metals.

162.    Gerber's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Gerber's Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Gerber's unfair and deceptive acts or practices, Plaintiffs Gray and David and members of the Florida Subclass suffered damages by purchasing Gerber's Products because they would not have purchased Gerber's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

163.    Gerber's deceptive trade practices caused Plaintiffs Gray and David and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Gerber to profit at the expense of Plaintiffs Gray and David and members of the Florida Subclass. The injuries Plaintiffs Gray and David and members of the Florida Subclass suffered were to legally

protected interests. The gravity of the harm of Defendant Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

164. Plaintiffs Gray and David and members of the Florida Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

**ELEVENTH CAUSE OF ACTION**
**Texas Deceptive Trade Practices and Consumer Protection Act**
**Tex. Bus. & Com. Code §§ 17.41 *et seq*.**
**(*On behalf of Plaintiffs Heather Lowrey and Sommer McGurl and the Texas Subclass*)**

165. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

166. Plaintiffs Heather Lowrey and Sommer McGurl bring this claim individually and on behalf of the members of the proposed Texas Subclass against Gerber for violations of Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §§ 17.41 *et seq*.

167. Plaintiffs Lowrey and McGurl and members of the Texas Subclass intend to assert a claim under the TDTPA against Gerber. Plaintiffs and members of the Texas Subclass intend to provide written notice of the specific complaint and damages to Gerber in accordance with Tex. Bus. & Com. Code § 17.05. Subject to the response, if any, by Gerber within 60 days of the notice, Plaintiffs Lowrey and McGurl, individually and on behalf of the Texas Subclass, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the TDTPA.

168. At all material times herein, Gerber engaged in "trade" or "commerce" as defined by the TDTPA.

169. The TDTPA, Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, and deceptive acts or practices in the conduct of any trade or commerce."

170. For the reasons discussed herein, Gerber violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 *et seq*. Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

171. Defendant Gerber repeatedly advertised, both on the labels for the Products, on its websites, and through a national advertising campaigns, among other items, that the Products were and are high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber failed to disclose the material information that the Products contained unsafe levels of toxic heavy metals.

172. Gerber's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase its Products without being aware that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Gerber's unfair and deceptive acts or practices, Plaintiffs Lowrey and McGurl and members of the Texas Subclass suffered damages by purchasing Gerber's Products because they would not have purchased the Products had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

173. Gerber's deceptive trade practices caused injury in fact and actual damages to Plaintiffs Lowrey and McGurl and members of the Texas Subclass in the form of the loss or diminishment of value of the Products Plaintiffs Lowrey and McGurl and members of the Texas Subclass purchased, which allowed Gerber to profit at the expense of Plaintiffs Lowrey and

McGurl and members of the Texas Subclass. The injuries to Plaintiffs Lowrey and McGurl and members of the Texas Subclass were to legally protected interests. The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

174. Plaintiffs Lowrey and McGurl and members of the Texas Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

**TWELFTH CAUSE OF ACTION**
**New York Deceptive Acts and Practices Act**
**N.Y. Gen. Bus. Law § 349**
**(*On behalf of Plaintiff Cassandra Martell and the New York Subclass*)**

175. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

176. Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Gerber for violations of New York Deceptive Acts and Practices Act ("NYDAPA"). N.Y. Gen. Bus. Law § 349.

177. Plaintiff Martell and members of the New York Subclass and Defendant Gerber are "persons" under NYDAPA. N.Y. Gen. Bus. Law § 349(h).

178. Gerber's actions as set forth herein occurred in the conduct of trade or commerce under NYDAPA.

179. NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Gerber's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

180. In the course of business, Gerber made affirmative misrepresentations that conveyed to Plaintiff Martell and members of the New York Subclass that the Gerber baby food

Products were high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber, however, concealed and suppressed material facts concerning the Products, including that they contained unsafe levels of heavy metals.

181.    Plaintiff Martell and members of the New York Subclass had no way of discerning that Gerber's representations were false and misleading without conducting their own scientific tests.

182.    Gerber thus violated NYDAPA by making statements, when considered as a whole from the perspective of a reasonable consumer, that conveyed that its Products were high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber also failed to disclose and warn that its Products were unsafe and unsuitable for consumption by infants and young children, and that the Products contained levels of heavy metals.

183.    Gerber intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

184.    Gerber knew or should have known that their conduct violated NYDAPA, and owed a duty to Plaintiff Martell and members of the New York Subclass to disclose the true and unsafe nature of its Products.

185.    Gerber's concealment of the level of heavy metals in its Products was material to Plaintiff Martell and members of the New York Subclass, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

186. Gerber's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Martell and members of the New York Subclass, about the safety of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

187. Gerber's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Gerber's unlawful acts and practices complained of herein affect the public interest.

188. As a direct and proximate result of Gerber's misrepresentations, concealment of, and failure to disclose material information, as well as Gerber's deceptive and unfair acts and practices made during the course of Gerber's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

189. Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by NYDAPA and applicable law.

**THIRTEENTH CAUSE OF ACTION**
**New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
**(*On behalf of Plaintiff Martell and the New York Subclass*)**

190. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-70, as if fully set forth herein.

191. Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Gerber for violations of New York False Advertising Act ("NYFAA"), N.Y. Gen. Bus. Law § 350.

192.    The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350(a).

193.    Gerber caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known or should've been known through the exercise of reasonable care by Gerber to be untrue and misleading.

194.    Gerber made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers concerning its Products. Specifically, Gerber intentionally concealed and suppressed material facts concerning the safety of its Products, and that they contained, or were at risk of containing, levels of toxic heavy metals. Gerber intentionally and grossly defrauded and mislead Plaintiff Martell and members of the New York Subclass concerning the true and unsafe nature of its Products.

195.    The misrepresentations and omissions regarding the Products set forth herein were material and likely to deceive a reasonable consumer, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

196.    Gerber intentionally and knowingly misrepresented material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

197.    Gerber's false advertising was likely to and did in fact deceive reasonable consumers, including Plaintiff Martell and members of the New York Subclass, about the true nature of the safety and quality of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

198.    Gerber's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Gerber's unlawful acts and practices complained of herein affect the public interest.

199.    As a direct and proximate result of Gerber's misrepresentations, concealment of, and failure to disclose material information, as well as Gerber's deceptive and unfair acts and practices made during the course of Gerber's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

200.    Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by NYFAA and applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for the following relief:

A.    Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, constitute violations of the law as described herein;

C.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.    An order directing Defendant to engage in a corrective advertising campaign;

F.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct, trebled where appropriate;

G.    An award of punitive damages;

H.    An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

I.    An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

J.    Such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: March 25, 2021

**WILLIAMS & SKILLING, P.C.**

By: */s/*

Charles L. Williams
7104 Mechanicsville Turnpike, Suite 204
Mechanicsville, Virginia 23111
Tel.: 804-447-0307, ext. 305
Fax: 804-447-0367
cwilliams@williamsandskilling.com

**CARLSON LYNCH LLP**
Todd D. Carpenter (to apply pro hac vice)
Scott G. Braden (to apply pro hac vice)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.: 619-762-1900
Fax: 619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown (to apply pro hac vice)
Michael A. Tompkins (to apply pro hac vice)
Brett R. Cohen (to apply pro hac vice)
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: 516-873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*